*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BUTLER, Minors.

UNPUBLISHED
March 13, 2025
11:59 AM

No. 367013
Wayne Circuit Court
Family Division
LC No. 2019-001563-NA

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

YOUNG, P.J. (*concurring in part and dissenting in part*).

I write separately because while I agree with the majority that DHHS made reasonable efforts toward reunification and there were statutory grounds for termination, I would instead reverse the trial court's order terminating respondent's parental rights because the trial court clearly erred in determining that termination was in the best interests of the children.

## I. BEST-INTERESTS ANALYSIS

Termination is not in the children's best interests because of the strong bond respondent has with them.

In reviewing the trial court's best interests determination, the most important factors to consider on the basis of these facts are the children's bond to respondent, her parenting ability, her visitation history, and the children's well-being while in care. *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 5; *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court stated it did just that. When making its best-interests determination, the court stated it considered the record as a whole, and noted the individual needs of the children did not significantly differ so as to require separate best-interests analyses. The court also stated that it considered the following factors: relative placement, compliance with the service plan, visitation history, the children's wellbeing in care, the bond between respondent and the children, respondent's parenting abilities, the children's need for permanence, stability, and finality, and the advantages of a foster home over respondent's home. The court concluded that termination was in the children's best interests because of their need for stability and permanence, and because of respondent's continued substance abuse.

-1-

To me, the trial court's statements appear conclusory and without record support. To begin, a child's placement with relatives weighs against termination. *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). Here, the children are living with a family relative, their paternal grandmother LT. Second, the court emphasized the children's need for stability and permanence. But that implies two things: (1) that their life is unstable presently and (2) that termination would create more stability. There is no record evidence for either conclusion. Certainly, respondent's substance abuse problems are severe. Respondent's visitation never progressed from supervised to unsupervised because the court had safety concerns that although respondent was seeing the children every day, she was simultaneously testing positive for illegal substances. As such, respondent's substance abuse was a major factor in the court's best-interests determination, and rightly so. *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019). But there is no evidence on the record that respondent ever abused substances in the children's presence or that the illegal substances affected her temperament in such a way that she was abusive to the children during supervised visitation. While there is no testimony from the children regarding their thoughts and feelings about respondent, DHHS caseworkers expressed the children love respondent and have developed a very strong bond and attachment to her during their formative years, and respondent displayed very good parenting skills while in their presence. I agree with the Chief Justice that "a proper best-interests determination under the present facts must be more nuanced and consider whether *some* kind of parent-child relationship is in [the children's] best interests." See *In re JMG/JGG/JMG, Minors*, ___ NW3d ___ (2025) (Docket No. 167535) (CLEMENT, C.J., *concurring in part and dissenting in part*).

Further, there is nothing in the record to suggest that once parental rights were terminated, LT would keep the children from respondent. Neither LT, nor Huber or any DHHS employee, reported issues with respondent's parenting abilities, other than the more obvious and practical housing and income considerations. LT accepted respondent's financial help in providing the children basic necessities and allowed respondent to bathe, feed, and play with the children in LT's home. There is evidence on the record that when respondent was at LT's home, she was fully in charge of parenting the children, ensuring they were fed, bathed, ready for school, and ready for bed. Further, LT expressed being open to both guardianship and adoption. The children were placed with LT for almost the entire time they were in care and respondent was able to maintain a close bond with the children while visiting LT's home almost every day for the last four years.

Given these facts, I struggle to see how termination is supported by a preponderance of the evidence and caution against the conflating of two separate inquiries: (1) whether a parent's issues still exist and (2) whether termination is in the best interests of the children. Put differently, a trial court cannot cite a parent's ongoing issues with substance abuse and then cite the children's need for "permanence and stability," without first connecting the two. At the evidentiary hearing on DHHS's first petition to terminate parental rights, the trial court observed that "with the children being placed with [LT], I think even if the Court does terminate, [the parents] still will see their children and they seem to have a bond with their children and it puts the children in no worse position . . . ." I agree. There is nothing on the record indicating termination would at all affect the children's stability, let alone positively. The trial court seemed to imply some sort of mental stability afforded by termination in that the children and family members would have "some idea of permanency as opposed to always wondering if and when and to what extent mom and dad will start pitching in" but that ignores the mentally destabilizing impact of termination. Sankaran, V. S., & Church, C. E., *The ties that bind us: An empirical, clinical, and constitutional argument*

*against terminating parental rights*, Family Court Review, 1–19, 12-14 (2023) <https://doi.org/10.1111/fcre.12710> (accessed March 6, 2025).

Simply put, the trial court and DHHS failed to recognize the current arrangement would look no different to the children after respondent's rights were terminated—they would continue living with LT and respondent would continue having supervised access if LT permitted. And again, there is nothing in the record to indicate LT would prohibit respondent from seeing the children. Even though there is evidence of years of substance abuse with no progress made to support terminating respondent's parental rights, I am left with the definite and firm conviction that termination was a mistake in light of placement with LT, respondent's consistent visitation, the bond between respondent and the children that LT and DHHS caseworkers observed, and respondent's parenting abilities. I see no need to disrupt family relationships and unnecessarily impose a more adversarial arrangement into a situation that can be dealt with in other ways.

## II. GUARDIANSHIP AS AN ALTERNATIVE TO TERMINATION

It is also important to note that after DHHS filed its first petition for termination of respondent's parental rights, Huber requested at a September 2022 hearing that the trial court add guardianship as a concurrent goal with reunification while respondent continued to work through her treatment plan. Huber believed termination would be detrimental to the children because of their strong attachment to respondent, who visited every day. And at the final evidentiary hearing in June 2023, the court appropriately noted that a guardianship would still leave hope that respondent could address the barriers to reunification, even though she was already given four years to do so. Guardianship "does not permanently separate a parent and child. It allows the child to keep a relationship with the parent when placement with the parent is not possible. Indeed, the appointment of a guardian is done in an effort to avoid termination of parental rights." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). See also *In re Simpson*, ___ Mich App at ___; slip op at 6-7 ("Unlike termination of parental rights, the appointment of a guardian for a juvenile is not necessarily permanent. . . . Even the parent has the ability to seek termination of the guardianship . . . . [And] the parent is still under many circumstances permitted to maintain a relationship with the child.") (quotation marks and citations omitted).

Further, "for a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate 'under [MCL 712A.19a(8)] that initiating the termination of parents rights to the child is clearly not in the child's best interests' or the court must 'not order the agency to initiate termination' proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App at 359, quoting MCL 712A.19a(9). The trial court here was presented with that circumstance. It found the year prior that termination was not in the best interests of the children and gave respondent additional time to get sober. However, the court expressly stated that if respondent failed, termination was the guaranteed outcome, rather than considering that LT herself was open to guardianship and that the court again needed to engage in a best-interests analysis. Promising respondent that termination was the guaranteed outcome was purely punitive because it ignored the best-interests analysis—where the focus is always on the children and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

Michigan lacks a statutory mechanism for reinstating terminated parental rights. But unlike termination, guardianship is not necessarily permanent—it is a less restrictive alternative to

infringing on respondent's fundamental right to direct the care of her children. Under a guardianship arrangement, the trial court is required to review the guardianship annually and may conduct additional reviews, MCL 712A.19a(11), and can also hold a hearing on its own motion or upon petition from DHHS to determine whether a guardianship shall be revoked, MCL 712A.19a(13). Even a parent has the ability to seek termination. See MCR 3.979(F)(1)(b) (emphasis added) ("A juvenile guardian or *other interested person* may petition the court for permission to terminate the guardianship."). Finally, "while the guardian assumes the legal duties of a parent" in a guardianship arrangement, "the parent is still under many circumstances permitted to maintain a relationship with the child." *In re TK*, 306 Mich App at 705. Here, where guardianship was added as a concurrent goal of respondent's treatment plan as late as September 2022, and Huber believed termination would be detrimental to the children at that time, and where the circumstances remain identical between September 2022 and the date of termination, I would instead remand this case to the trial court to more thoughtfully consider the best-interests factors, including that a feasible alternative to termination seems to exist in a guardianship arrangement.


/s/ Adrienne N. Young